1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10    GREGORY L. BROWN,

11            Plaintiff,                    Case No.2:02-cv-02645 ALA (P)

12        vs.

13    D.L. RUNNELS, et al.,
              Defendants.              ORDER

14    _____/

15        Plaintiff Gregory Brown is proceeding *pro se* and *in forma pauperis* in the civil rights

16    action pursuant to 42 U.S.C. § 1983.  On April 22, 2008, Defendant Jeffrey Rohlfing, M.D.,

17    filed a motion for summary judgment.  Plaintiff filed a response in opposition to that motion on

18    May 27, 2008.   For the reasons stated below, Defendant's motion for summary judgment is

19    granted.

20                                    **I**

21        Mr. Brown suffers from aseptic necrosis of both hips. During the time frame at issue, Dr.

22    Rohlfing was one of a number of physicians that treated Mr. Brown while Mr. Brown was

23    incarcerated at High Desert State Prison ("HDSP").[1]

24    _____

25        [1]  This summary is taken from Dr. Rohlfing's statement of undisputed material facts from his motion for
      summary judgment (Doc. No. 144), unless otherwise noted.  In his response to defendant's motion for summary
26    judgment (Doc. No. 153), Mr. Brown admits all statements in Dr. Rohlfing's Declaration, other than that HDSP

                                    1

Dr. Rohlfing treated Mr. Brown as follows.  On  September 19, 2000, he ordered that the prison provide Mr. Brown a raised toilet seat with rails, a double mattress, crutches or a cane, a low bunk, and a lower tier.  Dr. Rohlfing also ordered that Mr. Brown not stand for more than ten minutes.  At that time Dr. Rohlfing also prescribed Motrin and Robaxin (a muscle relaxant), and took x-rays of Mr. Brown's pelvis, hips, and left knee.

On October 30, 2000, Mr. Brown saw Dr. Rohlfing at the clinic.  They discussed Dr. Rohlfing's recommendation that Mr. Brown have a total hip replacement.  On November 7, 2000, Dr. Rohlfing prescribed Elavil, in addition to the medications previously prescribed, to help Mr. Brown sleep.

On December 1, 2000, Doctor Rohlfing drafted a CDC 1845 ADA form for Mr. Brown. This form designated him as Permanently Mobility Impaired Status.  In addition, Dr. Rohlfing wrote orders for Mr. Brown to have an elevated toilet seat with rails, an extra pillow, and an extra blanket.

On February 2, 2001, Dr. Rohlfing admitted Mr. Brown to the Central Treatment Clinic ("CTC").  He noted that Mr. Brown had recently been moved to Administrative Segregation and had not been given the equipment ordered by Dr. Rohlfing.  Dr. Rohlfing prescribed Tylenol #3 (with Codeine) and Tylenol 325 mg for pain.  He requested an elevated bed, an elevated toilet seat and crutches for Mr. Brown.  When Mr. Brown was discharged from the CTC on February 8, 2001, Dr. Rohlfing issued orders to continue Mr. Brown's prescription of Motrin and Robaxin.  His orders also included that Mr. Brown be allowed to use his crutches outside his cell, a double mattress, and an elevated toilet seat with rails.

On November 2, 2001, Dr. Rohlfing wrote a progress note about Mr. Brown that described Mr. Browns hip condition, and indicated that Mr. Brown could not sit by himself and required a mobility chrono.  He then issued a chrono for Mr. Brown to receive a mobility

---

policy prevented Dr. Rohlfing from prescribing Mr. Brown the medication he requested.

1   impaired vest and noted that Mr. Brown could not sit down in the prison yard.

2       On March 14, 2002, Mr. Brown saw Dr. Rohlfing in the clinic.  He expressed his interest

3   in the hip surgery that Dr. Rohlfing had previously recommended.  He and Dr. Rohlfing

4   discussed the surgery and Mr. Brown's potential transfer to a facility where he could get stronger

5   medication.  Dr. Rohlfing also ordered an x-ray of Mr. Brown's knees.

6       On April 23 and May 28, 2002, Dr. Rohlfing saw Mr. Brown in the CTC again.  He

7   prescribed Ibuprofen, Tylenol, and continued Mr. Brown's prescription of Motrin and Robaxin.

8   Dr. Rohfling stated that he did not prescribe stronger medication because HDSP policy

9   prevented the prescription of narcotics to inmates who were not admitted on an inpatient basis.

10  Mr. Brown disputes the existence of this policy in his second amended complaint (Doc. No. 44)

11  and his response to defendant's motion for summary judgment (Doc. No. 153).  Mr. Brown

12  alleges that Dr. Rohlfing acted out of personal animosity toward Mr. Brown in his second

13  amended complaint.  ( Pl.'s Second Am. Compl. ¶¶ 39-42).

14      On June 19, 2002, Mr. Brown and Dr. Rohlfing discussed problems Mr. Brown was

15  having obtaining  a cane and an eggcrate mattress, for which he had received a chrono.  Dr.

16  Rohlfing told Mr. Brown that he needed to consider hip surgery.  Dr. Rohlfing also prescribed

17  more Motrin.  From May to July 2002, Dr. Rohlfing ordered Mr. Brown a longer cane, an

18  eggcrate mattress, and ordered that Mr. Brown be transported using a special ADA van.  On

19  August 16, 2002, Mr. Brown reported to Dr. Rohlfing that his hip problems were gradually

20  worsening.  Dr. Rohlfing prescribed Motrin and Tylenol, and ordered Mr. Brown a pillow to

21  place between his legs.

22      On November 13, 2002, Dr. Rohlfing and Mr. Brown again discussed hip surgery during

23  a clinic visit.  Dr. Rohlfing filled out a referral for Mr. Brown to consult with an outside

24  orthopaedic surgeon.  Dr. Rohlfing again wrote an order for Mr. Brown to receive a pillow for

25  between his legs.  On November 21, 2002, Dr. Rohlfing prescribed Mr. Brown a number of

26  medications including Robaxin, Motrin, and Tylenol.

1    Dr. Rohlfing and Mr. Brown met on December 25, 2002, so that Dr. Rohlfing could take

2  Mr. Brown's medical history and give him a physical examination to prepare for surgery.  On

3  February 19, 2003, Dr. Rohlfing prescribed Mr. Brown Motrin, Tylenol, and CTM.

4    On June 19, 2003, Mr. Brown saw an orthopaedic surgeon in Reno, Nevada for a

5  consultation.  His surgery was scheduled and then canceled.  On April 14, 2004, Dr. Rohlfing

6  prepared another preoperative history and gave Mr. Brown another physical examination.

7  During the period from 2002 to 2003, Dr. Rohlfing prescribed several medications for Mr.

8  Brown, including: Motrin, Tylenol, Chlorzoxazone (a muscle relaxant), Ranitidine (for stomach

9  ulcers), and Methocarbomol (a muscle relaxant).

10                                              **II**

11    Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may

12  be granted in favor of a party "if the pleadings, depositions, answers to interrogatories, and

13  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

14  any material fact and that the moving party is entitled to judgment as a matter of law."  A party's

15  motion for summary judgment must be granted "after adequate time for discovery and upon

16  motion . . . against a party who fails to make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof at

18  trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

19    "On summary judgment the inferences to be drawn from the underlying facts contained in

20  such materials must be viewed in the light most favorable to the party opposing the motion."

21  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  "The moving party bears the initial

22  burden to demonstrate the absence of any genuine issue of material fact."  *Horphag Research*

23  *Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  "Once the moving party meets its initial

24  burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as

25  otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *Id*.

26  (internal quotation marks omitted).

1    Where the party resisting a motion for summary judgment is *pro se*, the court "must

2    consider as evidence in his opposition to summary judgment all of [his] contentions offered in

3    motions and pleadings, where such contentions are based on personal knowledge and set forth

4    facts that would be admissible in evidence, and where [he] attested under penalty of perjury that

5    the contents of the motions or pleadings are true and correct." *See Jones v. Blanas*, 393 F.3d

6    918, 923 (9th Cir. 2004) (holding that allegations contained in a pro se plaintiff's verified

7    pleadings must be considered as evidence for purposes of summary judgment).

8                                                    **III**

9    "The unnecessary and wanton infliction of pain upon incarcerated individuals under color

10   of law constitutes a violation of the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051,

11   1056 (9th Cir. 2004) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). "A

12   violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a

13   prisoner's medical needs." *Id.* at 1057.

14   "In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v.

15   Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a 'serious medical

16   need' by demonstrating that 'failure to treat a prisoner's condition could result in further

17   significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *McGuckin*,

18   974 F.2d at 1059). "Second, the plaintiff must show the defendant's response to the need was

19   deliberately indifferent." *Id.*  A plaintiff can show a defendant's response was deliberately

20   indifferent by demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or

21   possible medical need and (b) harm caused by the indifference." *Id.*  "Indifference 'may appear

22   when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

23   shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *McGuckin*,

24   974 F.2d at 1059).

25   "A prison official acts with 'deliberate indifference . . . only if [he or she] knows of and

26   disregards an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d 1057. "Under this

1  standard, the prison official must not only 'be aware of facts from which the inference could be

2  drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

3  inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "'[D]eliberate

4  indifference to medical needs may be shown by circumstantial evidence when the facts are

5  sufficient to demonstrate that a defendant actually knew of a risk of harm.'"  *Id.* at 1057 n.4

6  (quoting *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003)).

7

8                                                    **IV**

9         Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs.

10  (Pl.'s Second Am. Compl. ¶¶ 39-42).  Specifically, Plaintiff alleges that Defendant refused to

11  prescribe Plaintiff the appropriate medication to relieve his hip pain.  (Pl.'s Second Am. Compl.

12  ¶¶ 39-42).  In his motion for summary judgment, Dr. Rohlfing maintains that prison policy

13  prevented him from prescribing narcotic medications that Mr. Brown requested.  (Def.'s Mot.

14  Summ. J. 15).

15         Dr. Rohlfing has submitted declarations from R. Sandam, M.D., Chief Medical Officer of

16  HDSP at the time period at issue in this action, and M. Roche, M.D., who was Chief Physician

17  and Surgeon at HSDP at the time.  Both doctors declare that HDSP had an unwritten policy that

18  physicians could only prescribe narcotics to inpatient inmates at the CTC at the time.  (Decl. of

19  M. Roche, M.D. ¶ 2; Decl. of R. Sandam, M.D. ¶ 2).  They assert that the policy came from the

20  Medical Director of the CDC, in order to address the issues of drug trafficking, substance abuse

21  and overdosing.  (Decl. of M. Roche, M.D. ¶ 2; Decl. of R. Sandam, M.D. ¶ 2).

22         To support his assertion that no such policy existed,  Plaintiff has submitted the

23  Declaration of Defendant D.L. Runnels, Warden of HDSP.  Defendant Runnels declares:

24                    At all times relevant to this suit, I was not involved with
              Plaintiff's medical care at HDSP.
25                    I played no role in deciding what medications would be
              prescribed to any inmate at HDSP.  I am not aware of any policies,
26              procedures, or practices at HDSP that involve special medical care

for inmates based solely upon their confinement in Ad Seg.
Furthermore, I am not aware of any policies, procedures, or
practices that would have prevented Plaintiff from receiving
medically appropriate treatment at HDSP.

(Decl. of D.L. Runnels ¶¶ 7 &8).

To avoid summary judgment, Mr. Brown  must present  some "'significant probative evidence tending to support'" the allegations.  *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir.1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).  Defendant Runnel's declaration does not refute Defendant Rohlfing's claim.  Rather, Defendant Runnel simply attests that he has no knowledge regarding prisoner medical care.  Mr. Brown presents no other evidence besides this declaration and his own assertions.  As a result, he does not meet his evidentiary burden.

The record demonstrates that Dr. Rohlfing was not indifferent to Mr. Brown's medical care.  Dr. Rohlfing prescribed numerous pain relievers and muscle relaxants to ease Mr. Brown's pain.  Dr. Rohlfing repeatedly encouraged Mr. Brown to undergo a total hip replacement, because, in Dr. Rohlfing's opinion, it was the best method to treat Mr. Brown's condition.  Dr. Rohlfing issued numerous chronos and orders addressing Mr. Brown's medical condition.  These acts show that Dr. Rohlfing was not deliberately indifferent.

Accordingly, it is ORDERED that:

1.  Defendant Rohlfing's motion for summary judgment is GRANTED.

/////

DATED: June 18, 2008                              /s/ Arthur L. Alarcón
                                                  UNITED STATES CIRCUIT  JUDGE
                                                  Sitting by Designation