1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GREGORY L. BROWN,

11              Plaintiff,              No. 2:02-cv-02645 ALA (PC)

12        vs.

13   D. L. RUNNELS, et. al.,

14              Defendants.             <u>ORDER</u>

15   _____/

16

17        Plaintiff Gregory L. Brown is a California state prisoner proceeding *pro se.*

18   Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of his

19   rights guaranteed by the First and Eighth Amendments of the United States

20   Constitution and his rights under the Americans with Disabilities Act ("ADA").

21   On May 5, 2008, Defendants Edward Alameda, L. Alexander, T. Bainbridge, D. J.

22   Blankenship, W. Brewer, T. Cole, D. Davey, J. Feliciano, T. Felker, A. Fiegener,

23   G. Harrison, G. Hibbits, T. Jackson, R. S. Johnson, T. Kopec, S. Leighton, G.

24   Lucas, J. Lynn, A. J. Malfi, A. Martin, J. Norlin, Quiggle, Linda L Rianda, D. L.

25   Runnels, T. Surges, R. Weeks, and M. Wright filed a motion to for summary

26   judgment (Doc. 146).  The motion is presently before this Court.

1

# I

At all times relevant to this action, Plaintiff was a prisoner at High Desert State Prison ("HDSP") in Susanville, California.  In 2004, Plaintiff was relocated to the California Substance Abuse and Treatment Facility ("SATF") in Corcoran, California.

On December 11, 2002, Plaintiff brought this civil rights action against 32 employees of the California Department of Corrections and Rehabilitations ("CDCR") pursuant to 42 U.S.C. § 1983.  With the Court's permission, Plaintiff amended his complaint on May 23, 2003 and then for a second time on December 12, 2004.  The Second Amended Complaint names 48 defendants.  All of the individual Defendants are being sued in their individual and official capacities.

Plaintiff alleges in the Second Amended Complaint that Defendants: (1) violated his Eighth Amendment right to be free from cruel and unusual punishment; (2) violated his First Amendment Rights by retaliating against him for filing grievances; and (3) violated his rights under the ADA.

On May 19, 2005, Magistrate Judge Kimberly J. Mueller screened the Second Amended complaint pursuant to 42 U.S.C. § 1915(A) and concluded that:

> If the allegations of the amended complaint are proven, plaintiff has a reasonable opportunity to prevail on the merits of the following claims against the following defendants:
>
> 1) Eight Amendment: Harrson, Lucas, Davey, Quiggle, Rohlfing, Runnels, Martin, Johnson, Felker, Malfi, Surges, Alameida, Kopec, Fleischman, Fiegner, Cole, Leighton, Brewer, Lynn, Wright, Braida, Jackson, Bainbridge, Halsath, Weeks and Alexander;
>
> 2) ADA: Martin, Johnson, Felker, Malfi, Surges, Alameida, Rianda, Runnels, Kopec, Fleischman, Fiegner and Cole; and
>
> 3) First Amendment Retaliation: Leighton, Brewer, Lynn, Wright, Felker, Blankenship, Norlin, Fleischman, Kopec, Jackson, Hibbits, Weeks, Alexander, Cole and Feliciano.

Magistrate Judge Mueller further held that: "With respect to the remainder of the

defendants and claims identified in plaintiff's second amended complaint,
plaintiff's second amended complaint fails to state a claim upon which relief can be
granted."

Defendants filed a motion to dismiss on June 8, 2007 (Doc. 97).  This Court
granted the motion to dismiss Plaintiff's ADA claim against Defendants Martin,
Johnson, Felker, Malfi, Surges, Alameida, Rianda, Runnels, Kopec, Fleischman,
Fiegner and Cole in their individual capacities.  The Court denied Defendants'
motion to dismiss in all other respects.

Defendant Rohfling filed a motion for summary judgment on April 22,
2008.  This Court granted defendant Rohfling's motion for summary judgment on
June 18, 2008.

## II

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary
judgment may be granted in favor of a party "if the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law."  A party's motion for summary judgment
must be granted "after adequate time for discovery and upon motion . . . against a
party who fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear the burden
of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"On summary judgment the inferences to be drawn from the underlying facts
contained in such materials must be viewed in the light most favorable to the party
opposing the motion." *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).
"The moving party bears the initial burden to demonstrate the absence of any
genuine issue of material fact."  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029,

1035 (9th Cir. 2007).  "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted).

Where the party resisting a motion for summary judgment is pro se, the court "must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that allegations contained in a pro se plaintiff's verified pleadings must be considered as evidence for purposes of summary judgment).

### III

 In their motion for summary judgment, Defendants contend that all claims arising out of events after December 11, 2002 are barred because plaintiff filed this action before he exhausted all of his administrative remedies.  The Court agrees and will dismiss any claims arising out of events after December 11, 2002 without prejudice.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Nonexhaustion under § 1997e(a) is an affirmative defense under the PLRA. *Jones v. Bock*, _ U.S._, 127 S.Ct. 910, 921 (2007).  Defendants have the burden of raising and proving the absence of exhaustion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion.  *Id*.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  *Id*. at 1119-20.  "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  *Id*. at 1120.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford v. Ngo*, _ U.S. _, 126 S.Ct. 2378, 2382 (2006).  However, a prisoner need not continue to pursue administrative remedies if "there is no further possibility that corrective action will be taken in response to [the] grievance."  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (internal quotation marks omitted).

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  Cal Code Regs tit 15, § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: "(1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, (4) third level appeal to the director of the California Department of Corrections."  *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  *Id*. at 1237-38.

1      A prisoner "may initiate litigation in federal court only after the

2   administrative process ends and leaves his grievances unredressed." *Vaden v.*

3   *Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006).  In *Vaden v. Summerhill*, a

4   California state prisoner sent a complaint to the district court before he had

5   exhausted his administrative remedies within the state prison system.  *Id*. at  1049.

6   He did, however, exhaust those remedies by the time the district court granted him

7   permission to file his complaint in forma pauperis under 28 U.S.C. § 1915.  *Id*.

8   The district court concluded that the prisoner satisfied the PLRA's exhaustion

9   requirement in those circumstances.  *Id.*  The Ninth Circuit reversed, stating that the

10   PLRA requires that a prisoner exhaust administrative remedies before submitting

11   any papers to the federal courts. *Id.* at 1051.

12      Here, Plaintiff could not have exhausted the inmate grievance process for

13   claims arising out of events after December 11, 2002, when this action was

14   initiated.  Plaintiff contends that he satisfied the exhaustion requirement by

15   amending his complaint.  Under Federal Rule of Civil Procedure 15(c), however,

16   the date of an amended complaint relates back to the date of the original complaint.

17   Therefore, the operative date of Plaintiff's second amended complaint, for

18   purposes of exhaustion, is December 11, 2002.  Because Plaintiff failed to exhaust

19   his administrative remedies as to claims thirteen through twenty-two before

20   December 11, 2002, those claims are dismissed without prejudice.  *See Vaden*, 449

21   F.3d at 1051 ("Because Vaden did not exhaust his administrative remedies prior to

22   sending his complaint to the district court, the district court must dismiss his suit

23   without prejudice.").

24                                    **IV**

25      In their motion for summary judgment, Defendants Alameida and Rianda

26   argue that they are entitled to summary judgment because the claims alleged

against them are based solely upon a theory of respondeat superior.  The Court agrees and grants Defendants' motion for summary judgment as to all claims alleged against Defendants Alameida and Rianda.

To state a claim under section 1983, a plaintiff must allege that: (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006).  "A person deprives another of a constitutional right, where that person does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made."  *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir.2007) (quotations omitted). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Johnson* at 743-44).

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979).  Plaintiff must demonstrate that Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)(internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

As to Defendant Alameida's liability, Plaintiff states in his opposition to the motion for summary judgment:

> 3.)      Defendant Alameida did not work at HDSP.  At all times relevant to this suit, Alameida was the director of CDCR.  (Ex. B 2-3.)  Alameida has never met, spoken to, or received any correspondence from Plaintiff, who is suing Alameida based upon his role as a supervisor.  (Ex. B 4, 6-7; Ex. Y 48: 17-50: 23.)  Alameida played  no role in Plaintiff's activities at HDSP, including but not limited to, Plaintiff's medical care or condition, Plaintiff's ability to participate in outdoor exercise, Plaintiff's property, or Plaintiff's housing assignment. (Ex. B 5.)
> Greg denies that he is suing defendant Alameida based upon his role  as a supervisor.  Greg is suing defendant Alameida for being deliberately indifferent to his Eighth Amendment Rights and his rights under the Americans with Disabilities Act (ADA) as set forth in the second amended-complaint.  At paragraphs 43-47 (See Exhibit – A; Sec. Am. Complaint at 43-47;  Also, See Greg's Declaration Attached hereto at 3(C).

Plaintiff's Opp. to Motion for Summary Judgment, 9-10.  First, Plaintiff alleges that he is suing Defendant Alameida based upon his role as a supervisor.  Plaintiff then contradicts his earlier statement and "denies that he is suing defendant Alameida based upon his role as a supervisor."  Plaintiff does not set forth any other allegations against Defendant Alameida.

As to Defendant Rianda's liability, Plaintiff alleges Defendant Rianda was deliberately indifferent to his rights under the Eighth Amendment and  under the Americans with Disabilities Act (ADA).   From July 2001 to July 2002, Rianda worked for the Inmate Appeals Branch (IAB) in Sacramento, California, but Rianda did not review grievance HDSP-S-02-0980.  (Ex. T 7; Ex. T 1.)  Plaintiff also states that Defendant Rianda had never met, spoken to, or received any correspondence from Plaintiff and that he played no role in Plaintiff's activities

8

there.

Plaintiff has asserted conclusory and unsubstantiated allegations that Defenants Rianda and Alameida were deliberately indifferent to his Eighth Amendment rights and his rights under the ADA.   He has not demonstrated that Defendants Rianda or Alameida knew of the violations and failed to act to prevent them; or that they promulgated a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.  *Hansen*, 885 F.2d at 646; *Taylor* , 880 F.2d at 1045. Thus, Defendants Rianda and Alameida are entitled to summary judgment as to all claims brought against them.

**V**

 The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  It is well established that the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.*

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5(1992) (citing *Whitley*, 475 U.S. at 320). The plaintiff must show that objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable state of mind in allowing or causing the

9

plaintiff's deprivation to occur.  *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

Plaintiff alleges that certain Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment.  Specifically, he alleges that: (1) on April 22, 2002, Defendants Harrison and Lucas used excessive force against him; (2) on November 7, 2002, Defendants Lynn, Brewer, and Leighton used excessive force against him during a cell extraction; (3) Defendants Runnels, Davey, and Quiggle were deliberately indifferent to his medical needs; (4) Defendants Alameida, L. Cole, Fiegener, Felker, Johnson, Kopec, Malfi, Martin, Surges, and Rianda, and Runnels denied him outdoor exercise; and (5) Defendants Briada, Leighton, and Wright denied him his basic human needs when he was placed on "management control status."  Each of these claims will be addressed in turn below.

**1**

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id*. at 7.

While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. *Id*.

Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id*. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97(1976)). Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. *Id*.

## A

In his Second Amended Complaint, Plaintiff alleges that on April 22, 2002, Defendant Harrison, needlessly and without provocation, discharged pepper spray into Plaintiff's face and slammed his head against the concrete floor, causing substantial injuries.  Plaintiff further contends that Defendant Lucas deliberately failed to prevent Defendant Harrison's assault.  Defendants Harrison and Lucas argue that Plaintiff's claims of excessive force  arising out of events occurring on April 22, 2002, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Court agrees that Plaintiff's claims as to this incident are barred and that Defendants are entitled to summary judgment.

Under *Heck*, if a favorable judgment on a § 1983 action would necessarily imply the invalidity of the plaintiff's conviction, the claim must be dismissed unless the plaintiff can show that the conviction has already been invalidated.  *Id*. at 487.  The methods by which a plaintiff may invalidate a conviction include direct appeal, expungement by executive order, and issuance of a writ of habeas corpus.  *Id*.

In *Edwards v. Balisok*, 520 U.S. 641, 644 (1997), the Supreme Court applied *Heck* specifically to prison inmates who have lost credits earned toward release as a result of disciplinary proceedings.  *Balisok* provides that, under such circumstances, an inmate must obtain habeas corpus relief before proceeding with an action for damages under § 1983 which would, if successful, necessarily imply

11

the invalidity of his conviction or length of sentence.  *Id.*

Here, Plaintiff was found guilty after a disciplinary hearing of attempted assault on a peace officer, after he attempted to strike defendant Harrison with his cane on April 22, 2002.  (Undisputed Fact 52; Exh. A, pp. 17).  The decision from the disciplinary hearing quoted a report prepared by Correctional Officer G. Lucas, stating in part:

> I asked Inmate BROWN for the food tray.  Inmate BROWN stood up and said "I'm not giving you the tray, I want to see the sergeant."  Correctional Officer G. Harrison stepped in front of the cell doorway, and gave Inmate BROWN a direct order to give him the food tray, twice.   Inmate BROWN raised his cane in the air over his right shoulder, holding the bottom of his cane with both hands.  Inmate BROWN stated "If you think you are man enough, come get it, you punk bitch."  I then pulled my MK9 Pepper Spray from the holster, holding it in my right hand, by my side.  Correctional Officer G. Harrison ordered Inmate BROWN to put the cane down, to turn around and cuff up, three times.  Inmate BROWN swung the cane at Officer Harrison.  C/O Harrison took one step backwards, to avoid the cane. [T]he cane struck the wall opposite the sink.  C/[O] Harrison sprayed Inmate BROWN in the face with his MK-3 Pepper Spray.  Inmate BROWN turned his back to us, and dropped his cane.  C/o Harrison and I were yelling get down to Inmate BROWN.  C/O G. Harrison entered the cell to place Inmate BROWN in hand restraints.  I holstered my Pepper Spray and drew my side handled baton, then entered the cell.  When C/o Harrison tried to grab Inmate BROWN'S arm, inmate BROWN tried to hit C/O G. Harrison with a closed fist, using his right hand, from a kneeling position.  C/O G. Harrison pushed Inmate Brown to the ground, using both of his hands.  While Inmate BROWN was on the ground, I held his legs down, while C/O G. Harrison placed hand restraints on him.

Exh. A., pp. 17.  The Hearing Officer then stated, "Inmate BROWN failed to provide any/additional evidence which could refute/mitigate the charge and the evidence presented against him."  *Id.*  Plaintiff was assessed a loss of 150 days of good time credits.  *Id.*

Here, success on Plaintiff's excessive force claim would necessarily imply the invalidity of his findings of guilt on the charge of attempted assault on an officer.  There is no dispute that on April 22, 2002, Defendant Harrison used

12

pepper spray against Plaintiff, and that he was briefly restrained to the floor by Defendants Harrison and Lucas.  Defendants Harrison and Lucas have demonstrated that the force used against Plaintiff was solely to disarm him and to gain control over him after he attempted to assault correctional staff with his cane.

In his Opposition, Plaintiff contends Defendants acted "needlessly and without any provocation." Plaintiff's Opp., 54.  Defendants' account, however, must control because Plaintiff was found guilty of assaulting correctional staff. Under *Balisok*, Plaintiff cannot challenge whether Defendant Harrison's use of force served the legitimate penological interest of preventing Plaintiff from assaulting correctional staff.   A finding that Defendant Harrison was not acting in self defense would undermine the finding at the disciplinary hearing that Plaintiff attempted to assault him.  Thus, Plaintiff's claim is not cognizable under § 1983 because it would necessarily imply the invalidity of the punishment imposed at the disciplinary hearing.  *See Balisok*, 520 U.S. at 648 ("respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" ).   Further, there is no evidence that Plaintiff sought to invalidate the finding of guilt or lengthening of his sentence by filing a petition for writ of habeas corpus prior to filing this suit.

While Plaintiff cannot challenge his conviction for attempted assault on a peace officer, he may present evidence that the amount of force used on him by Defendant Harrison to prevent the attempted assault was unjustified.  There is no dispute that: (1) Plaintiff swung his cane at Defendant Harrison with the intent of injuring him; (2) Defendant Harrison used pepper spray on Plaintiff; (3) Defendant Harrison restrained Plaintiff on the floor to prevent him from continuing his assault.  Based on these undisputed facts, no reasonable juror could find that

Defendant Harrison used more than the amount of force he believed was necessary to disarm and retrain plaintiff.  Thus, Defendant Lucas is entitled to summary judgment on the excessive force claim against him.  Accordingly, Plaintiff cannot support a claim against Defendant Lucas for failing to prevent Defendant Harrison from using the pepper spray.

**B**

In his Second Amended Complaint, Plaintiff contends that Defendants Lynn, Brewer, and Leighton "maliciously, sadistically, and vindictively" subjected him to a cell extraction on November 7, 2002, spraying him with pepper spray.  Plaintiff asserts that during the cell extraction, he was "lying on the bunk in agonizing pain."  Second Amended Complaint, ¶ 50.  Plaintiff alleges that Defendants extracted him from his cell in retaliation for: (1) contacting the Attorney General's Office, regarding the scheduling of a deposition; and (2) requesting medical care.

In their motion for summary judgment, Defendants Lynn, Brewer, and Leighton contend that they had a legitimate penological interest in removing Plaintiff from his cell.  They assert:

> Cell D7 117 had a capped sprinkler system [sic] designed to prevent tampering by inmates.  On November 7, 2002, Plaintiff was housed in D7 117, and Plaintiff did not require a capped sprinkler system.  (UF 61).  It became necessary to house another inmate in cell D7 117, when the inmate chose to break the fire-sprinkler inside his cell.  Accordingly, Brewer was ordered to escort Plaintiff to another cell.  (UF 61).

Def's Motion for Summary Judgment, 23.  Further, Defendant Lynn alleges that pepper spray was the least amount of force possible to remove Plaintiff from his cell and that Defendant Lynn was advised that the use of pepper spray was appropriate in light of Plaintiff's condition.

Plaintiff fails to demonstrate that Defendants Lynn, Brewer, and Leighton had any motivation for the cell extraction on November 7, 2002 other than to

14

satisfy a legitimate penalogical interest.  Plaintiff does not present any specific, nonconclusory factual allegations that Defendants possessed malicious and sadistic intent when they extracted him from his cell. *See Allen v. Bosley*, 253 Fed. Appx. 658, 659 (9th Cir. 2007) ("Allen failed to raise a triable issue that the defendants possessed malicious and sadistic intent when they administered pepper spray in an effort to restore discipline after another inmate, Jacob Silverman, refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell."); *see also  Jeffers v. Gomez,* 267 F.3d 895, 907 (9th Cir.2001) (per curiam) (to survive summary judgment, plaintiff must put forward specific, nonconclusory factual allegations that establish defendants acted with improper motives).  Thus, the undisputed evidence indicates that Defendants Lynn, Brewer, and Leighton acted with a legitimate penalogical interest.  They are entitled to summary judgment on this claim.

**2**

Plaintiff asserts that Defendants Runnels, Davey, and Quiggle were deliberately indifferent to his medical needs.  "The unnecessary and wanton infliction of pain upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir. 2004).  "A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs." *Id.* at 1057.

"In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted).  A plaintiff can show a

15

defendant's response was deliberately indifferent by demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.*

"A prison official acts with 'deliberate indifference . . . only if [he or she] knows of and disregards an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d 1057. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

As to Defendant Davey, Plaintiff asserts that:

> While en route to ad seg [Plaintiff] informed def. Davey of his need for prescription eyeglasses and medically approved health-care appliances to accommodate his severe avascular necrosis of the hips. Davey replied, "You should have thought about that before you created this mess, so live with the pain."

Second Amended Complaint, ¶ 28.

Defendant Davey argues that he played no role in providing Plaintiff with medical care at HDSP. Rather, Defendant Davey asserts that he was responsible for only for escorting Plaintiff to the medical care clinic after Plaintiff's incident with Defendant Harrison. The undisputed facts indicate that Defendant Davey did escort Plaintiff to the medical clinic for treatment, and therefore, was not deliberately indifferent to Plaintiff's medical needs. Plaintiff contends that Defendant Davey made a harassing statement regarding Plaintiff's need for medical care. However, verbal harassment generally does not violate the Eighth Amendment. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987) (citations omitted) (directing vulgar language at inmate does not state a constitutional claim).

16

Therefore, Defendant Davey is entitled to summary judgment on this claim.

Defendant Quiggle was the medical technical assistant (MTA) who treated Plaintiff at the medical care clinic after Plaintiff's incident with Defendant Harrison.  Plaintiff alleges that:

> On April 22, 2002, def MTA-Quiggle intentionally and maliciously cleared [Plaintiff] for ad seg placement without any of his medically approved health-care appliances despite the availability of health care data and inconsistent with and contrary to CDC results.

Second Amended Complaint, ¶ 39.  Defendant Quiggle alleges that he was not responsible for determining the medical appliances that Plaintiff should possess in administrative segregation.   He asserts that only medical doctors were permitted to provide or deprive an inmate of a medical appliance. As an MTA, he was not authorized to provide or deprive inmates of medical appliances.  The scope of Plaintiff's "medical clearance," as determined by Defendant Quiggle, was limited to determining whether Plaintiff: (1) was medically stable, or (2) required further medical treatment.

In his opposition to the motion for summary judgment, Plaintiff admits that "neither Davey nor Quiggle are medical doctors, and therefore, had no right to exercise a professional medical judgment in depriving [Plaintiff\ of his properly obtained medical appliances."  Opposition to motion for summary judgment at 58.  Plaintiff maintains that nevertheless, Defendant Quiggle was deliberately indifferent to his medical needs.   The undisputed facts indicate, however, that Defendant Quiggle examined and treated Plaintiff's injuries.  Specifically, Defendant Quiggle observed a lump above Plaintiff's eye and applied ice ot the injury to reduce swelling.  Undisputed Facts, ¶ 33.  Thus, the undisputed evidence demonstrates that Defendant Quiggle was not deliberately indifferent.

In his opposition, Plaintiff relies on California Code of Regulation, title 15

17

§ 3358, which provides in relevant part:

> Possession of Appliance. No inmate shall be deprived of a prescribed orthopedic or prosthetic appliance in the inmate's possession upon arrival into the department's custody or properly obtained while in the department's custody unless a department physician or dentist determines the appliance is no longer needed and the inmate's personal physician, if any, concurs in that opinion.

Plaintiff does not allege that Defendant Quiggle wrongfully deprived Plaintiff of his medical appliances in violation of this statute. Rather, Plaintiff contends that several hours after Defendant Quiggle examined him, unnamed correctional staff wrongfully deprived Plaintiff of his medical appliances in ad seg. Defendant Quiggle cannot be held responsible for the subsequent actions of unidentified parties. Thus, Defendant Quiggle is entitled to summary judgement on this claim.

Finally, Plaintiff does not assert any specific factual allegations that demonstrate how Defendant Runnels was deliberately indifferent to his medical needs. The only allegation Plaintiff makes against Defendant Runnels regarding his medical care was that:

> "Dr. Rohlfing told [Plaintiff] that he was not allowed to prescribe certain medications for [Plaintiff] per Def. Warden Runnels' orders. . . On information and belief, Dr. Rohlfing and Warden Runnels have conspired to deprive [Plaintiff] of the right to be free from cruel and unusual punishment."

Second Amended Complaint, ¶ 41. In Defendant Runnels asserts that he played no role in Plaintiff's medical care at HDSP. Plaintiff does not present any evidence to refute Defendant Runnels' argument. "Sweeping conclusory allegations will not suffice to prevent summary judgment." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (citation omitted). "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Id.* (citation omitted). Because Plaintiff does not present any evidence as to how Defendant Runnels was deliberately indifferent to Plaintiff's medical needs, Defendant Runnels is entitled

18

to summary judgment on this claim.

**3**

In his Second Amended Complaint, Plaintiff alleges that Defendants Alameida, L. Cole, Fiegener, Felker, Johnson, Kopec, Malfi, Martin,Surges, Rianda and Runnels denied him his Eighth Amendment right to outdoor exercise. He alleges that these Defendants refused to comply with the doctors' orders to modify his exercise schedule.[1]  Specifically, Plaintiff  alleges that because he has bilateral avascular nercrosis of both hips, he cannot take a seated position on the ground.  He asserts that he needed both his cane and his "potty chair" in order to engage in outdoor exercise.

The deprivation of outdoor exercise by prison officials to prisoners can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Spain v. Procunier*, 600 F.2d 189 (9th Cir.1979).  "[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."  *Id*. at 199.  Deprivation of necessities by a prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, "objectively, sufficiently serious," and (2) the prison official possesses a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834 (citations omitted) (quotation omitted).  In determining whether a deprivation of a basic necessity, such as outdoor exercise, is sufficiently serious to satisfy the objective component, a court must consider the circumstances, nature and duration of the deprivation. *Spain*, 600 F.2d at 199.  To satisfy the subjective component, the requisite state of mind depends on the nature of the claim.  In prison-conditions cases, the necessary

---

[1]As discussed above, Plaintiff cannot maintain claims against Defendants Alameida or Rianda based on a theory of respondeat superior.

state of mind is one of "deliberate indifference." *Farmer*, 511 U.S. at 834.

The evidence presented indicates that Defendants Cole, Fiegener, Felker, Kopec, Martin, and Runnels reviewed Plaintiff's medical orders and exercise program on three separate occasions. Each time Defendants modified Plaintiff's exercise program to ensure it was appropriate. The last change occurred in June 2002, when Defendants assigned Plaintiff to walk alone in an exercise yard after he indicated that he could not safely participate in group outdoor exercise. Defendants order was designed to accommodate Plaintiff's need for a cane during outdoor exercise. Therefore, it is undisputed that Cole, Fiegener, Felker, Kopec, Martin, and Runnels modified Plaintiff's exercise program to ensure he would be permitted to possess medical appliances, including his cane.

Plaintiff subsequently refused to attend outdoor exercise without his "potty chair." However, there is no dispute that: (1) Plaintiff did not have an order for a seating apparatus during outdoor exercise; and (2) Defendants did not believe Plaintiff required a seating apparatus in order to participate in outdoor exercise. Accordingly, Defendants did not attempt to prevent Plaintiff from participating in outdoor exercise.

Defendants Johnson, Malfi, and Surges conducted second level reviews of each of Plaintiff's grievances regarding his outdoor exercise program. It is undisputed that all of the information reviewed by Defendants Johnson, Malfi and Surges indicated that Plaintiff's complaints were addressed previously, and his exercise program was modified to comply with his needs.

**4**

Plaintiff alleges that his Eighth Amendment rights were violated while he Defendant Wright placed him on "management control status" and he was denied

his basic human needs, such as eating utensils, tooth powder, clothes, paper, soap, toothbrush, bed linens, and a mattress for ten consecutive days.  He alleges that he asked Defendants Braida and Leighton to provide him with these hygienic items, and they refused to do so.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *Farmer*, 511 U.S. at 832; *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001).

In their motion for summary judgment, Defendants Wright, Briada, and Leighton allege that Plaintiff was able to regularly clean himself while confined in management control status.  They  assert that during the ten days Plaintiff was on management control status, he was provided a shower on the second, fifth , sixth, seventh, eighth, ninth, and tenth days.  Additionally, Defendants Wright, Briada, and Leighton contend that Plaintiff was provided clean clothing and linens on his fifth day on management control status.   As noted above, Plaintiff alleges that he was denied sanitary items for all ten days that he was under management control status.

Viewing all facts alleged by both Plaintiff and Defendants Wright, Briada, and Leighton in the light most favorable to Plaintiff, the court finds that Defendants are entitled to summary judgment. While prison officials must provide inmates with adequate sanitation, not every inconvenience or *de minimis* injury constitutes a violation of the Eighth Amendment.  *See Hudson v. McMillian*, 503

21

U.S. 1, 9-10 (1992) (8th Amendment excludes from constitutional recognition de minimis uses of force); *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state Eighth Amendment violation and no amendment can alter that deficiency), *judgment vacated on other grounds* , 493 U.S. 801 (1989). *See also Shakka v. Smith*, 71 F.3d 162, 167-68 (8th Cir. 1995) (no Eighth Amendment violation where inmate given cleaning materials, but deprived of shower for three days after other inmates threw urine and feces on him); *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain), *cert. denied*, 116 S. Ct. 306 (1995); *DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988) (correctional officer spitting upon prisoner does not rise to level of constitutional violation); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water).  Because Plaintiff's claim does not rise to the level of an Eighth Amendment violation, Defendants Wright, Briada, and Leighton are entitled to summary judgment.

## VI

Plaintiff alleges that he was retaliated against by certain Defendants for exercising his First Amendment rights by filing grievances.  Specifically he alleges (1) on May 2, 2002, Defendants Felker, Blankenship, Norlin, Fleischman, and Kopec conspired to remove Plaintiff from single cell status; (2) on October 28, 2002, Defendants Barron and Hibbits subjected Plaintiff to a cell move;[2] (3) that he

---

[2]The screening order did not name Defendant Barron as a defendant against which a First Amendment claim could be alleged.  Thus, Plaintiff cannot maintain a First Amendment claim against Defendant Barron.  The screening order did, however, recognize the First Amendment claims against Defendant Hibbits with regard to the October 28, 2002 incident.

was subjected to a retaliatory cell move by Defendants Leighton, Brewer and Lynn on November 7, 2002 for communicating with the Attorney General's Office; and (4) that Defendant Wright placed Plaintiff on ten days of management control status without access to "an eating utensil, toilet paper, soap, tooth brush and tooth powder/paste, a mattress, bed linens, clothing etc." (Pet. Second Am. Comp. 11-18.)  Plaintiff also claims that he was retaliated against for filing the present action on December 11, 2002.[3]

In *Rhodes v. Robinson*, the Ninth Circuit set forth the required elements for establishing a prima facie retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, 11 and (5) the [*568]  action did not reasonably advance a legitimate correctional goal.

408 F.3d 559, 567-568 (9th Cir. 2005).  "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

First, as to the claim that on May 2, 2002, Defendants Felker, Blankenship, Norlin, Fleischman, and Kopec conspired to remove Plaintiff from single cell status, Defendants have presented evidence of a legitimate penalogical goal. Defendants contend that Plaintiff was moved from single cell status to double cell status for the following reasons: (1) Plaintiff met the criteria for double cell housing; (2) double cell housing would be safe and appropriate for Plaintiff; (3)

---

[3]As discussed above, all claims regarding events after December 11, 2002 must be dismissed with prejudice for failure to exhaust administrative remedies. Defendants move for summary judgment on the remaining retaliation claims on the grounds that Plaintiff failed to establish a prima facie case.  For the reasons set forth below, Defendants' motion is granted with respect to these claims.

double cell housing would serve the legitimate penalogical goal of maximizing bed space.

Plaintiff has not produced any evidence to refute Defendants assertions. Plaintiff does not present any evidence demonstrating absence of legitimate penological purpose at any point in his second amended complaint (doc. 44) or his response to Defendants' motion for summary judgment (doc. 160).  Instead, Plaintiff repeats the statements in his second amended complaint, which statements merely assert that he was retaliated against for filing a complaint.  These statements are legal conclusions and not are not sufficient to meet his evidentiary burden.  Because Plaintiff has not set forth specific facts showing that there is a genuine issue with respect to the required element of absence of legitimate penological purpose, Defendants are entitled to summary judgment with respect to this First Amendment retaliation claim.

Second, Defendants are entitled to summary judgment on Plaintiff's claim that he was subject to a retaliatory cell move on October 28, 2002.  Plaintiff fails to provide any details about this incident.  As a result, Plaintiff has failed to allege the elements of a retaliation claim.

Third, as to the claim that Plaintiff was subjected to a retaliatory cell move by Defendants Leighton, Brewer and Lynn on November 7, 2002, Defendants have demonstrated that the act served a legitimate penalogical interest.  Defendants contend that Plaintiff was moved to from cell D7 117 because: (1) another inmate required the capped sprinkler system in cell D7 117; (2) Plaintiff was living in cell D7 117 and did not require a capped sprinkler system; and (3) Plaintiff refused to exit cell D7 117.  Plaintiff has not produced any evidence to refute Defendants assertions.  Again, Plaintiff has failed to demonstrate the absence of legitimate penological purpose at any point in his second amended complaint (doc. 44) or his

24

response to Defendants' motion for summary judgment (doc. 160).

Fourth, as to the claim against Defendant Wright that he placed Plaintiff on ten days of management control status without access to "an eating utensil, toilet paper, soap, tooth brush and tooth powder/paste, a mattress, bed linens, clothing etc," Defendant Wright contends that his actions were based upon a legitimate penalogical interest.  Defendant Wright contends that he placed Plaintiff on management control status because he believed it would prevent disruptive, destructive, or dangerous behavior.  Plaintiff does not address this claim in his opposition to the motion for summary judgment.   Thus, it is undisputed that Defendant Wright was motivated by a legitimate penalogical interest.

With respect to each of Plaintiff's First Amendment retaliation claims, Defendants' motion for summary judgment is granted.

## VII

Defendants argue that Plaintiff's claims for injunctive relief under the ADA are moot because he is no longer housed at HDSP, and, therefore, the controversy between Plaintiff and Defendants no longer exists.  Plaintiff has failed to address this argument in his response.   Defendants are entitled to summary judgment on the ADA claims because they are moot.

A case or controversy must subsist throughout all stages of litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)) (holding that a former prisoner's release from prison rendered his habeas petition moot because there was no longer a case or controversy as required by Article III, § 2 of the Constitution).  If at any time during the course of litigation, the plaintiff ceases to suffer, or be threatened with, "an actual injury [that is] traceable to the defendant," and that is "likely to be redressed by a favorable judicial decision," the matter is moot. *Spencer*, 523 U.S.

25

at 7; *see also Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (holding that a
prisoner's civil rights action seeking injunctive relief that was brought under 42
U.S.C. § 1983 was moot because, after having been transferred from state to
federal custody, he was no longer subject to the regulations that he sought relief
from).  When a prisoner seeking injunctive relief from a certain prison's actions
ceases to be housed in that facility, the case or controversy then ceases to exist and
the matter is moot. *Johnson*, 948 F.2d at 519.

An exception to the mootness doctrine applies to claims that are "capable of
repetition, yet evading review." *Spencer*, 523 U.S. at 18.  A plaintiff attempting to
invoke this exception must make two showings. *Id.*  First, that the challenged
action is too short in duration to be fully litigated prior to its cessation or
expiration. *Sample v. Johnson*, 771 F.2d 1335, 1339 (9th Cir. 1985) (holding that
twenty day and six month time limits were too short for full adjudication of
plaintiffs' claims and that longshoremen returning to work in a hazardous
occupation after having been injured was insufficient to establish a likelihood of
re-injury).  Second, that there is a "demonstrated probability" that the plaintiff will
be subjected to the specific action at issue again. *Id.* at 1339-40 (quoting *Weinstein
v. Bradford*, 423 U.S. 147, 149 (1975)).  In the case of a prisoner's claim for
injunctive relief based on civil rights where that prisoner is no longer housed at the
allegedly offending facility, that prisoner must demonstrate a reasonable
expectation of returning to that facility. *Johnson*, 948 F.2d at 519.

Plaintiff is not subject to any action or decisions of the staff at HSDP
because he is no longer an inmate at that prison.  Furthermore, he has not alleged
any facts that provide a basis for a reasonable belief that he will ever be housed at
HDSP again in the future, nor does he allege that he is subject to similar treatment
at SATF. *See Johnson*, 948 F.2d at 519 (holding that a prisoner's civil rights claim

26

for injunctive relief under 42 U.S.C. § 1983 was moot because he was no longer housed at the offending facility, and that to except a claim from the mootness doctrine, such a claimant must show that he has a reasonable expectation of returning to that facility).  The same standard applies for a plaintiff making an ADA claim.  *See, e.g., Dufresne v. Veneman*, 114 F.3d 952 (9th Cir. 1997) (holding that an ADA claim for injuries sustained as a result of Medfly pesticide use was moot because the state had eradicated the Medfly and the plaintiff could not show that the pest's return was probable).  Plaintiff makes no showing that there is a demonstrated probability that he will be subjected to the specific action at issue again.

No case or controversy, for which injunctive relief under the ADA can be granted, currently exists between Plaintiff and Defendants.  Furthermore, the record is devoid of any evidence demonstrating a probability that Plaintiff will again be subject to the care of any HDSP employee.  Therefore, Defendants' motion is granted with respect to this claim.

## CONCLUSION

It is ordered that Defendants' motion for summary judgment is GRANTED (Doc. No 146).  Plaintiff's Motion in Limine (Doc. No 165), filed on July 11, 1008, is denied as moot.  The trial date, January 6, 2009, is hereby VACATED. The clerk is ordered to file JUDGMENT in favor of the Defendants and close the case.

DATED: August 13, 2008


/s/ Arthur L. Alarcón
_____
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

27